# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Ammar Harris, | Case No.: 2:22-cv-01231-JAD-EJY |
| Plaintiff | |
| | **Order Granting Summary Judgment in Favor of the Defendants, Resolving All Other Pending Motions, and Closing this Case** |
| v. | |
| F. Dreesen, et al., | |
| Defendants | [ECF Nos. 57, 58, 67, 68, 74, 82] |

Pro se plaintiff Ammar Harris brings this civil-rights action under 42 U.S.C. § 1983, alleging that Ely State Prison Correctional Officers Richard Cody Adams and Carol Gardner violated his First Amendment rights when they threw away his legal materials and other property items in retaliation for grievances that he filed against them. Harris moves for summary judgment, arguing that he can show that Adams and Gardner knew about his prior grievances and acted in retaliation for them. Adams and Gardner crossmove for the same and contend that Harris's claim can't survive summary judgment because he failed to exhaust his administrative remedies and is unable to show that they acted with a retaliatory motive. Although Harris has shown that there is some evidence that Adams knew about his grievance history, the record is devoid of proof that either officer's hassling of Harris was retaliatory in motive. So I grant Adams and Gardner's motion for summary judgment, deny Harris's, and close this case.

**Background**

In 2020, Nevada Department of Corrections (NDOC) inmate Harris was transferred back and forth between Ely State Prison and High Desert State Prison because he was undergoing medical treatment.[1]  In anticipation of one such transfer from Ely to High Desert, he had a box of personal items and three boxes of legal work taped up and ready to move.[2]  But when he arrived in the Ely property room on his transfer day, October 13, 2021, he brought some extra legal material, clothes, toiletries, books, and letters[3] and placed them on the table.  Correctional Officer Carol Gardner promptly pushed them into the trash[4] while Correctional Officer Richard Cody Adams stood by and laughed, saying that Harris's "fucking property wasn't going on the bus."[5]  Harris requested an unauthorized-property notification and was forced to pay to ship his things to High Desert.[6]  He received his property a few weeks later and filed an informal, first-level, and second-level grievance about Adams and Gardner's conduct, obtaining no relief.[7]

So Harris filed this civil-rights action under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act against various state officials and Nevada Department of Corrections (NDOC) employees for failing to accommodate his injuries, retaliating against him, and intentionally destroying his property.[8]  I screened his complaint and

---

[1] ECF No. 7 at ¶ 34–37, 52 (verified first-amended complaint); ECF No. 68-1 at 3 (Harris's bed history).

[2] ECF No. 68-9 (property-inventory sheet).

[3] ECF No. 68-1 at 3; ECF No. 68-12 (inmate-inventory transfer).

[4] ECF No. 7 at ¶ 80.

[5] *Id.*; ECF No. 53 at ¶ 16.

[6] ECF No. 86-10 (unauthorized-property notification); ECF No. 86-11 (shipping receipts).

[7] ECF No. 68-12; ECF No. 68-13 (grievances).

[8] ECF No. 7.

found a cognizable First Amendment retaliation claim against Adams and Gardner, so that claim alone moved on to the litigation track.[9]

Both parties now move for summary judgment.  Harris argues that he can establish that Adams and Gardner violated his constitutional rights when they threw away his belongings in retaliation for grievances that he filed against them.[10]  Adam and Gardner respond that Harris abandoned his retaliation claim after he failed to resubmit his second-level grievance, preventing his complete exhaustion.[11]  But if I do find that Harris properly exhausted, they assert that they are shielded from his suit by the doctrine of qualified immunity and Harris can't show that they acted with a retaliatory motive or to advance a legitimate correctional goal.[12]  They also move for an extension of their briefing deadlines and permission to late-file additional documents to authenticate some of their exhibits.[13]  Harris responds with a request to file a surreply, arguing that he would be prejudiced if the documents were included.[14]  He also objects to the magistrate judge's denial of his request for a subpoena to compel a potential nonparty witness to supply testimony in a telephonic interview.[15]

---

[9] ECF No. 8.

[10] ECF No. 57.  Harris's motion is peppered with references to his disability-based claims, but because they were screened out more than a year ago while he pursued them in a different lawsuit, *see* ECF No. 8 at 6; *Harris v. Daniels*, 2:22-cv-00293-CDS-NJK, and I denied his motion to consolidate that case with this one, ECF No. 14 at 4, I consider only his retaliation claim.

[11] ECF No. 68 at 11–13.

[12] *Id.* 13–20.

[13] ECF No. 67; ECF No. 74.

[14] ECF No. 82.

[15] ECF No. 58.

**Discussion**

**I.      Good cause exists to extend Adam and Gardner's briefing deadlines, but Harris has not shown that a surreply or sanctions are warranted.**

Before reaching the merits of the parties' crossmotions for summary judgment, I address their many pending requests about briefing and evidentiary issues.  I start with the fact that Adams and Gardner's response to Harris's summary-judgment motion and their own countermotion were filed late.  Though they had already been given 17 extra days to respond to Harris's motion,[16] they explained that they needed another 7 days due to the crush of other work,[17] and they filed their joint response and summary-judgment motion on that seventh day while the motion for extension of time remained pending.[18]  Harris did not oppose their request, and Local Rule 7-2(d) permits the court to deem that failure to oppose the request as Harris's consent to grant it.  Regardless, I find good cause for this short additional extension and that Harris is not prejudiced by the delay, so I grant Adam and Gardner's motion to extend time and consider their joint response[19] and summary-judgment motion[20] as timely filed.

Even later were three declarations that Adams and Gardner submitted for the sole purpose of authenticating nine of their summary-judgment exhibits.[21]  They were accompanied by a motion for leave to file them, arguing that defense counsel's heavy caseload and NDOC's staff shortages made it difficult to procure the declarations in time to submit them alongside the

---

[16] ECF No. 66.

[17] ECF No. 67.  The request for the second extension was timely filed.

[18] *See* ECF Nos. 68, 69.

[19] ECF No. 69.

[20] ECF No. 68.

[21] ECF No. 74.

4

two-weeks-earlier filings.[22]  Defendants contend that Harris will not be prejudiced by this inclusion because the declarations do not contain "new or additional facts, but merely prove authenticity."[23]  Harris responds that, had he known sooner about the three declarants, he would have requested discoverable information from the declarants or included them in his complaint or summary-judgment motion.[24]  He opposes the leave request and asks the court to award monetary sanctions against the defendants for this late submission.[25]  Harris also asks the court to consider his surreply on the declaration issue in which he argues that one of the declarants, Julie Williams, interfered with his ability to exhaust his administrative remedies.[26]

      "A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause."[27]  "Good cause usually exists if there is a showing that the party seeking good cause was reasonably diligent."[28]  Adams and Gardner requested leave to file these additional documents 13 days after filing their summary-judgment motion, which shows that they acted with reasonable diligence to obtain the declarations under these circumstances.  And the evidence that the declarations purport to authenticate—Harris's historical bed assignments,[29] NDOC's administrative regulations,[30] Ely's operational

---

[22] *Id*. at 1.

[23] *Id.* at 1–2.

[24] ECF No. 77 at 1–2.

[25] *Id*. at 4–5.

[26] ECF No. 82 at 2.  The motion is docketed as one for leave to file additional documents, but he titles it—and I construe it as—a motion for leave to file a surreply.

[27] L.R. 7-2(g).

[28] *Borenstein v. Animal Foundation*, 526 F. Supp. 3d 820, 849 (D. Nev. 2021).

[29] ECF No. 68-1.

[30] ECF Nos. 68-4, 68-5, 68-15.

procedures,[31] and all of Harris's grievance records[32]—was timely filed as exhibits to the defendants' summary-judgment motion and are critical to evaluating both dispositive motions. The belated declarations are exclusively authenticating and do not supply any material case facts.[33]  And Harris does not dispute the authenticity of any of the documents they address.  So I find good cause to grant Adams and Gardner's motion to late-file these three authenticating declarations and deny Harris's requests for various associated relief.

## II.  Harris's objection to the magistrate judge's discovery order is overruled.

Harris also challenges the magistrate judge's denial[34] of his motion for the court's assistance in obtaining testimony from another NDOC inmate, third-party witness Reginal Howard.[35]  Harris had filed a "Motion for Subpoena of Reginal Howard," explaining that he wanted the court to "grant [a] subpoena" ordering Howard to "supply testimony" in a telephonic interview, which Harris believes would "create a genuine issue of material fact regarding motivation of retaliation."[36]

The rules of civil procedure don't contemplate a litigant's ability to subpoena a third-party witness to supply testimony via a phone interview; the way to obtain oral testimony is through a deposition conducted under Federal Rule of Civil Procedure 30.[37]  So the magistrate

---

[31] ECF No. 68-6.

[32] ECF Nos. 68-7, 68-8, 68-13, 68-14.

[33] *See* ECF Nos. 74-1–74-3.

[34] ECF No. 56.

[35] ECF No. 58.

[36] ECF No. 52 at 2.

[37] Fed. R. Civ. P. 30 (stating that "[a] party may, by oral questions, depose any person . . . without leave of court"; explaining that "[t]he deponent's attendance may be compelled by subpoena under Rule 45"; and describing the procedures that must be employed by "[a] party who wants to depose a person by oral questions").

judge liberally construed Harris's motion as one to allow him to depose Howard.[38]  But because Harris failed to explain how he could satisfy the obligations that come with taking a deposition, the magistrate judge denied his motion without prejudice to his ability to refile it with information about the deposition logistics and his plan to pay for it.[39]  Harris did not refile his motion with the requested information; rather he objects to the magistrate judge's recommendation, arguing that he only requires a telephone interview with Howard and that Howard could mail in his declaration.[40]

A district judge may reconsider any non-dispositive matter that has been finally determined by a magistrate judge "when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."[41]  This standard of review "is significantly deferential" to a magistrate judge's determination[42] and requires "a definite and firm conviction that a mistake [of fact] has been committed"[43] or a relevant statute, law, or rule has been omitted or misapplied.[44]

Harris has not shown that the magistrate judge's denial of his motion for a subpoena compelling Howard to supply testimony via a telephone interview was clearly erroneous or contrary to law.  The Federal Rules of Civil Procedure do not contemplate this method for obtaining third-party-witness testimony, and Harris has not provided any authority to show that the court has an obligation to aid litigants in obtaining testimony in this way.  And while the rules

---

[38] ECF No. 56.

[39] *Id.* at 2.

[40] ECF No. 58.

[41] *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993).

[42] *Id.*

[43] *Id.* (internal quotation marks omitted).

[44] *See Grimes v. City and Cnty. of S.F.*, 951 F.2d 236, 240–41 (9th Cir. 1991).

do authorize depositions for that purpose, Harris has not demonstrated that he has the means or ability to coordinate and take a deposition, which would include the cost of subpoena service,[45] the statutory $40/day witness fee,[46] and the hefty expense of a court reporter.  So Harris has not demonstrated that the magistrate judge's denial of his request without prejudice to his ability to refile it with information about how he planned to arrange and pay for the deposition was improper.  His objection is thus overruled.[47]

### III.   Harris properly exhausted his administrative remedies.

As their first basis for ending this case in their favor, Adams and Gardner argue that Harris's claim isn't justiciable because he failed to exhaust the prison's grievance system for redressing his allegations.  The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing a civil-rights action to redress alleged constitutional violations by prison staff.[48]  The Supreme Court has interpreted the PLRA as "requir[ing] proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules."[49]  Of course, "[a]n inmate need exhaust only such administrative

---

[45] The cost of serving a subpoena is not waived despite Harris's *in forma pauperis* status.  *Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir. 1989).

[46] 28 U.S.C. § 1821(b) and (c).

[47] To the extent that I could liberally construe this objection as an FRCP 56(d) suggestion that Howard might be able to supply evidence to support Harris's theory that Adams and Gardner acted with a retaliatory motive, Harris has not complied with FRCP 56(d), and his attempt to obtain information from Howard was not diligently pursued because he did not file his motion, ECF No. 52, until after discovery closed.  *See* ECF No. 26 (scheduling order with discovery deadline of 8/29/23, which expired before Harris filed the motion).

[48] 42 U.S.C. § 1997e(a).

[49] *Woodford v. Ngo*, 548 U.S. 81, 91, 93 (2006).

remedies as are 'available,'"[50] which requires that the procedures "are 'capable of use' to obtain 'some relief for the action complained of.'"[51]

To succeed on a PLRA-exhaustion defense at summary judgment, the defendant must "prove that there was an available administrative remedy" that the prisoner did not exhaust; the burden then shifts to the plaintiff to provide evidence that the remedy was unavailable to him.[52] But "the ultimate burden of proof remains with the defendant."[53]  A court should grant summary judgment based on a lack of exhaustion only "[i]f undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust."[54]

### A.   NDOC's grievance process has three levels to exhaust.

NDOC's Administrative Regulation (AR) 740 requires inmates to follow three steps to exhaust the grievance process.[55]  Inmates must first file an informal grievance to which the prison has 45 days to respond.[56]  If the prison fails to respond within that time, an inmate can appeal by filing a first-level grievance, which the prison then has another 45 days to respond to.[57] If the inmate fails to receive another response, he can appeal to the second-level (and last)

---

[50] *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016).

[51] *Id*. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

[52] *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Block*, 549 U.S. 199, 204 (2007)) (quotations omitted).

[53] *Id*.

[54] *Id*. at 1166.

[55] ECF No. 68-15.

[56] *Id*. at 12.

[57] *Id*. at 6, 14.

grievance.[58]  The prison then has 60 days to respond to the second-level grievance.[59]  If that's denied or the prison fails to respond, the inmate has exhausted his administrative remedies.

### B.  Harris exhausted NDOC's grievance procedures.

Adams and Gardner argue that Harris did not properly exhaust his administrative remedies because one of the provisions of NDOC's inmate-grievance procedure, AR 740.08, required Harris to attach to his second-level grievance all documentation from prior levels, including any responses or rejections he may have received,[60] and Harris failed to do so.[61] Harris responds that he followed all grievance requirements and that his grievances were accepted at every level.[62]  He asserts that the rejection notifications he received for these missing documents were improper and made the grievance process effectively unavailable to him.[63]

Harris's informal- and first-level grievances were timely filed without a response from the prison, so he appealed and submitted his second-level grievance.[64]  Three weeks later, he received two improper-grievance memoranda notifying him that he had failed to include the

---

[58] *Id*. at 6.

[59] *Id*. at 15.

[60] ECF No. 68 at 12–13.

[61] *Id.*

[62] ECF No. 73 at 2.

[63] *Id.* at 2, 9.

[64] ECF No. 68-13 at 9.

1    proper documents under AR 740.08(5) [65] with his first- and second-level submissions. [66]  The

2    memoranda gave him five days to resubmit both grievances with "all previously submitted

3    documents including prior submitted grievance(s)." [67]  Harris disregarded those memoranda and

4    filed this lawsuit five months later.

5           The prison's reliance on AR 740.08(5) to reject Harris's grievances—and to now argue

6    that the process was not exhausted—is unsound.  AR 740.08 is titled "INFORMAL

7    GRIEVANCE," differentiating it from the next two AR sections that are called "FIRST LEVEL

8    GRIEVANCE" and "SECOND LEVEL GRIEVANCE." [68]  AR 740.08(5) directs, "An inmate

9    shall use Form DOC-3097, Grievant Statement Continuation Form, if unable to present the

10   details of [his] claim in the space provided, limited to two continuation form pages or maximum

---

13   [65] The defendants actually call this section "AR 740.08(4)*(D)(5)*," but it appears that it should
     actually be AR 740.08(5) because an error in the structure of the printed regulation caused what
14   should actually be AR 740.08(5) & (6) to be indented in a way that makes it look like (5) & (6)
     are subsections of AR 740.08(4)(D), *see* ECF No. 68-15 at 11:

> D.   Time frames are waived for allegations of sexual abuse regardless of when the
>      incident is alleged to have occurred.
>
>      5.    An inmate shall use Form DOC-3097, Grievant Statement Continuation
>      Form, if unable to present the details of their claim in the space provided, limited to
>      two continuation form pages or a  maximum of twon continuation form pages. All
>      documentation and factual allegations available to the inmate must be submitted at
>      this level with the grievance.
>
>      6.    All grievances submitted should also include the remedy sought by the
>      inmate to resolve this claim. Failure to submit a remedy will be considered an
>      improper grievance and shall  not be accepted.
>
>      7.   If the inmate's remedy to their grievance includes monetary restitution or damages, then the
>      inmate will get the following forms from unit staff, unit caseworker, or law libraries:

[66] *Id.* at 4, 7.

[67] *Id.* (cleaned up).

[68] ECF No. 68-15 at 10–15.

of two continuation form pages. *All documentation and factual allegations available to the inmate must be submitted at this level with the grievance.*"[69]

It's the second, all-documentation sentence that defendants claim Harris failed to comply with. The plain-language interpretation of that sentence is that it requires an inmate to attach "[a]ll documentation and factual allegations" to his informal grievance.[70] This sentence says nothing about first- or second- level grievances at all, so it does not require (as the defendants claim) an inmate to attach informal and first-level grievances to second-level ones. In fact, it makes it very clear that it's "at this level" that the supporting documentation must be submitted—meaning the informal grievance level regulated by AR 740.08. And although it seems common for NDOC personnel to deny all levels of grievances based on this provision,[71] the two sections that govern first- and second-level grievances contain no analogous document-attachment requirements.[72] So NDOC's regulations did not require Harris to attach his prior grievances to his first- or second-level submissions in order to properly exhaust the grievance process.

Adams and Gardner argue that it's important for inmates to attach copies of their grievance records because paper records may be lost "in transit if, as here, a grievance needs to receive a response from staff at another institution."[73] While it's true that Harris was filing his grievances at High Desert about an incident that occurred at Ely and thus awaiting a response

---

[69] *Id*. at 11 (cleaned up) (emphasis added).

[70] *Id*.

[71] *See* ECF No. 68-14 at 6, 13, 18, 27–28.

[72] *See* ECF No. 68-15 at 12–15.

[73] ECF No. 68 at 12.

from Ely,[74] Adams and Gardner also acknowledge that all inmate grievances are entered into the Nevada Offender Tracking Information System and are accessible through history reports.[75]  So although inmates might make the prison's job easier if they attach their prior grievances, they're not required to do so.  The record shows that Harris properly submitted his grievances, and the prison improperly rejected them for lack of documentation.  And because Harris reached the second level in accordance with NDOC regulations and thus exhausted his administrative remedies, the defendants are not entitled to summary judgment based on a lack of exhaustion.

### IV.   Adams and Gardner are entitled to summary judgment because the record is devoid of proof that their conduct was based on a retaliatory motive.

While Harris sufficiently exhausted the prison's grievance procedures, enabling him to bring this lawsuit, the litigation process presented him with a new hurdle: proving his case. Harris's sole remaining claim is that Adams and Gardner violated his First Amendment rights by retaliating against him for filing grievances.  To be sure, "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."[76]  A viable First Amendment retaliation claim in the prison context requires "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[77]  Harris theorizes that Gardner threw away his legal material while Adams watched and laughed.  And

---

[74] Harris was transferred to High Desert on October 13, 2021, and filed his informal grievance four days later.  ECF No. 68-1 at 3; ECF No. 68-13 at 3.

[75] ECF No. 68 at 12.

[76] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

[77] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2004).

they did all of this, he claims, in retaliation for previous grievances that he filed against them.[78] He asserts that, after he begged for an unauthorized-property notification, the two officers required him to pay to send his other belongings to High Desert instead of putting them on the transfer bus.[79]

Adams and Gardner don't quarrel with Harris's account of these events, and this conduct was "adverse" as a matter of law.[80]  But they argue that Harris can't show that their conduct was motivated in any way by retaliation for filing grievances against them because they didn't know that he was filing them.[81]  They also contend that Harris's grievances don't complain about their conduct—and barely mention them at all—so the grievances could not have reasonably prompted them to retaliate even if they had known about them.[82]

### A.   To survive summary judgment, Harris must show that the defendants' conduct was motivated by retaliation.

To prevail on this retaliation claim, Harris must prove that his act of filing grievances against Adams and Gardner "was the substantial or motivating factor behind the defendant's conduct."[83]  "To survive summary judgment, [he is] required to present circumstantial evidence of motive, which usually includes: (1) proximity in time between protected speech and the alleged retaliation; (2) that the defendant expressed opposition to the speech; or (3) other

---

[78] ECF No. 7 at ¶ 80, 82.

[79] ECF No. 72 at 7.

[80] *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (noting that a plaintiff need only show "that a reasonable factfinder could interpret [the alleged threat] as intimating [and] that some form of punishment or adverse regulatory action would follow") (cleaned up).

[81] ECF No. 68 at 14–15.

[82] *Id.* at 15.

[83] *Brodheim*, 584 F.3d at 1271 (internal quotation marks omitted).

1    evidence that the reasons proffered by the defendant for the adverse action were false and

2    pretextual."[84]  While "timing can properly be considered as circumstantial evidence of retaliatory

3    intent,"[85] the plaintiff must ultimately show that the retaliatory intent is the "but-for cause" of the

4    adverse action.[86]  Because a defendant is entitled to summary judgment when he can show an

5    absence of evidence on just one element of the plaintiff's cause of action,[87] Gardner and Adams

6    are entitled to summary judgment unless Harris can identify evidence in the record that shows

7    that their conduct was motivated by retaliation for his grievance filing.

8

9    **B.**  **Harris hasn't shown that his grievance filing was a motivating factor for Adams and Gardner's adverse action.**

10   Adams and Gardner suggest that they couldn't have retaliated against Harris for filing

11   grievances against them because they didn't even know he was doing so.[88]  Indeed, whether

12   Harris's submissions prior to the property-room incident with these defendants can even be

13   considered grievances against them is arguable.  Before his October 2021 transfer, Harris was

14   bounced back and forth between Ely and High Desert and had issues with his property (which

15   became the subject of a grievance and several other prison filings).  Adams's name appeared in

16   three of these filings prior to Harris's final transfer to High Desert, and Gardner's name appeared

17   in one.  In December 2020, after he was first transferred to High Desert, Harris filed a grievance

18

---

19   [84] *McCollum v. California Dep't of Corr. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)) (cleaned up).

20   [85] *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) (cleaned up).

21   [86] *Reed v. Lieurance*, 863 F.3d 1196, 1212 (9th Cir. 2017) (citing *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

22   [87] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)) (explaining that "a complete failure of proof concerning an essential element of the nonmoving party's case

23   necessarily renders all other facts immaterial").

[88] ECF No. 68 at 15.

complaining that he received an unauthorized-property notification from Adams and that he wished to ship this extra property to High Desert at his own expense.[89]  When he did not receive his belongings, he filed an inmate-request form in May 2021 requesting the location of his property.[90]  In that request form, he unrelatedly mentioned that Gardner gave him an unauthorized-property notification for excess books that he hoped to exchange.[91]  Adams responded to this request, first informing Harris that "we are not holding anything other than your [unauthorized] property" and then approving his request to exchange his books.[92]  Finally, in August 2021, Harris filed a personal-property claim requesting roughly $3,000 in compensation for the property that he alleged had been discarded, listing Adams as a witness.[93]

Although Harris contends that he can prove that Adams and Gardner were "aware of his property grievances,"[94] the record evidence of Gardner's knowledge is nonexistent.  While her name was mentioned in Harris's May 2021 form requesting the location of his belongings, there is no evidence that Gardner knew of that mention.  Harris argues that Gardner was also the subject of a June 2021 grievance regarding an unauthorized-property notification.[95]  But that informal grievance doesn't mention Gardner.[96]  So I cannot find a genuine issue of material fact that Gardner even knew that Harris was mentioning her in grievances, let alone that she was retaliating against him for doing so.

---

[89] ECF No. 68-8 at 64–65.

[90] *Id.* at 66.

[91] *Id.*

[92] *Id.*

[93] *Id.* at 20–23.

[94] ECF No. 72 at 2.

[95] *Id.* at 3.

[96] ECF No. 68-7 at 3.

There is some evidence that Adams knew about Harris's property filings. Adams responded to Harris's May 2021 request, so it could be inferred that Adams may have looked back at earlier grievances in doing so. Because I must draw all inferences in the light most favorable to Harris, I find that Adams's response to Harris's request form is circumstantial evidence that Adams knew about the earlier missing property grievances.

But that circumstantial evidence that Adams knew about Harris's property filings does not create a genuine issue of fact that Adams or Gardner's destruction of Harris's property was fueled by a retaliatory motive. The only evidence Harris points to is his own declaration that Adams and Gardner retaliated against him "for filing grievances against them."[97] But "mere speculation that defendants acted out of retaliation is not sufficient,"[98] and speculation is all that Harris can offer for this element. And while the adverse action happened after Adams may have become aware of Harris's grievances, that timing isn't enough. The Ninth Circuit has held that a retaliation claim cannot rest on the "logical fallacy" that because the adverse action occurred after the protected conduct there must be a causal connection.[99] So because there is no evidence to prove that Harris's grievances were a motivating factor for Adams or Gardner's actions—the key causation element—Adams and Gardner are entitled to summary judgment on Harris's retaliation claim.

---

[97] ECF No. 53 at 4.

[98] *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

[99] *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (explaining that the "logical fallacy of *post hoc, ergo propter hoc*, literally [means] 'after this, therefore because of this'") (cleaned up).

**Conclusion**

IT IS THEREFORE ORDERED that defendants Richard Cody Adams and Carol Gardner's motion to extend time to file their summary-judgment briefings **[ECF No. 67]** and motion for leave to file authenticating documents **[ECF No. 74] are GRANTED**, and plaintiff Ammar Harris's motion to file a surreply **[ECF No. 82] is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **[ECF No. 68] is GRANTED.**

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment **[ECF No. 57] is DENIED,** and his objection to the magistrate judge's ruling **[ECF No. 58] is OVERRULED**.

The Clerk of Court is directed to **ENTER JUDGMENT** in favor of the defendants and against the plaintiff and **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
May 6, 2024

18